**UNITED STATES of America, Appellee,**

v.

**Anthony GRANDISON, Appellant.**

**No. 83–5165.**

United States Court of Appeals,
Fourth Circuit.

Argued Nov. 7, 1985.

Decided Feb. 21, 1986.

Rehearing and Rehearing En Banc
Denied April 28, 1986.

Martha F. Rasin, Annapolis, Md., for appellant.

James C. Savage, U.S. Atty., Baltimore, Md. (Catherine C. Blake, U.S. Atty., Ty Cobb, Asst. U.S. Atty., Baltimore, Md., Susan M. Stevens, on brief), for appellee.

Before CHAPMAN and SNEEDEN, Circuit Judges, and HILTON, United States District Judge for the Eastern District of Virginia, sitting by designation.

HILTON, District Judge:

Anthony Grandison, appellant herein, was indicted on November 17, 1982 by a Special Narcotics Grand Jury for the District of Maryland for (1) possession of heroin with the intent to distribute in violation of 21 U.S.C. § 841(a)(1), (2) possession of

cocaine with the intent to distribute in violation of 21 U.S.C. § 841(a)(1) and (3) of possession, by a convicted felon, of a firearm shipped in interstate commerce in violation 18 U.S.C. § 922(h)(1).

On August 6, 1982, Anthony Grandison reached his mandatory release date on a prior conviction and was placed on probation. His conditions of probation required that he not travel outside of Baltimore, Maryland without permission from his probation officer, or fail to report any interrogation by a law enforcement official.

On November 1, 1982, Grandison, while attempting to board a plane to Miami, was stopped at the Baltimore-Washington International Airport with a briefcase full of cash. While Grandison resisted the airport security woman's efforts to open the briefcase, he was photographed by a Maryland state police officer. Having refused to provide his identity or to respond to questions posed to him by the state police, he was released.

The photograph taken at the airport on November 1, 1982, was distributed to federal law enforcement officials the next day. An agent of the Drug Enforcement Administration identified Grandison as the man shown in the photograph. John Hannigan, Grandison's probation officer, was notified, and a parole violation warrant was issued by Mr. Hannigan.

Anthony Garrison, a friend of Grandison's was directed by Grandison to rent a room at the Warren House Hotel on Reistertown Road in suburban Baltimore on November 8, 1982. After renting room 219 at the Warren House Hotel he gave Grandison the one key he had obtained.

On November 9, 1982, Scott Piechowitz and Cheryl Piechowitz, his wife, were working at the Warren House Hotel. While Cheryl Piechowitz listened, Scott Piechowitz and Grandison discussed the retirement of Sugar Ray Leonard. Leonard had announced his retirement at an event at the Civic Center in Baltimore, Maryland that evening. Tickets for the event were $50.00 each and records kept in connection with that event indicated that Wendy Grandison, the appellant's alleged wife, purchased two such tickets.

Arrangements were made on November 10, 1982, to arrest Grandison for violating the terms of his probation. The warrant was issued at the behest of Mr. Hannigan. That afternoon, after calling Hannigan to inform him of his imminent arrival, Grandison appeared at Hannigan's office and was arrested. His belongings were inventoried by the United States Marshal incident to that arrest. Among his belongings was a key to room 219 of the Warren House Hotel and other items. Pursuant to Grandison's request, those items were turned over to a black woman who arrived shortly after Grandison's arrest. Later, a woman matching the description of the woman to whom Grandison had given his belongings, appeared at the Warren House Hotel seeking to retrieve the contents of room 219. Mr. Piechowitz declined to allow her access, contacted the FBI, and was informed that a Garrison or Grandison had been arrested earlier that day.

Mr. Piechowitz then took custody of the contents of room 219 and began to make a list of those items he discovered. Before he could finish his inventory, he gave the items to an FBI agent. Among the items discovered were a ticket to the Sugar Ray Leonard retirement event, gelatin capsules, glassine envelopes, a revolver, and a locked yellow bag. A search warrant was obtained for the locked yellow bag and that search uncovered four ounces of heroin and four and one-half ounces of cocaine.

On both March 11 and 14, 1983, evidentiary hearings were held on motions filed by the defendant. Both Scott Piechowitz and Cheryl Piechowitz testified for the government. Cheryl Piechowitz identified Grandison at both the preliminary hearing and at trial, as the man she had seen in the lobby of the Warren House Hotel on November 9, 1982. On April 28, 1983, shortly before trial of this cause was to begin, Scott Piechowitz and an associate were shot and killed in the lobby of the Warren House Hotel.

Grandison was convicted of all counts after a five day jury trial and was sentenced on Count 1 to a term of eight years incarceration, a fine of $25,000, and a special parole term of five years. He received an identical sentence on Count 2. On Count 3 he was sentenced to five years and fined $5,000. All sentences were directed to run consecutively.

Grandison appeals his conviction assigning numerous errors in the trial and in the subsequent sentencing. Finding no merit to these contentions, we affirm the convictions and the sentence imposed on all counts.

The appellant alleges that the trial court erred in failing to disclose to the appellant and his counsel a note received from the jury during the first day of trial; for not promptly investigating the matter as to any possible prejudice to the jury; and for not excusing the foreman and the juror.

At the close of the trial on May 11, 1983, after the jury had been instructed, counsel reviewed notes received by the Clerk during the course of the trial. One of these notes, which had not been previously seen by either counsel, had been received by the court on the first day of trial. That note, written by the foreman, read as follows:

Judge Howard,

Juror number nine—our expectant mother—is a physical therapist that works in peoples homes in West Baltimore. During the testimony today, some of the people involved in this case lived in the same area that she works. She is becoming concerned about what might happen after this trial is over. I believe that you should be aware of her concern. Thank you, Robert Schwenker.

After becoming aware of that note, counsel for the government and the defendant moved to strike both the foreman and juror number nine. Both motions were denied. The defendant also moved for a mistrial and that motion was also denied. Instead, Judge Howard asked the jurors, as a whole, if any of them were unable to begin their deliberations and conclude their deliberations in the case. There was no response and the jury was permitted to retire and deliberate on its verdict.

Under the Sixth Amendment, a criminal defendant has the right to trial by an impartial jury. *Reynolds v. United States*, 8 Otto 145, 154, 98 U.S. 145, 154, 25 L.Ed. 244 (1879). "When a question is raised before the jury retires about whether a juror can fulfill his duties with an open mind, the District Court should determine that the juror is competent to proceed before continuing with the trial." *United States v. Thompson*, 744 F.2d 1065, 1068 (4th Cir.1984). *See also, United States v. Pomponio*, 517 F.2d 460, 463 (4th Cir.1975), *United States v. Hankish*, 502 F.2d 71, 77 (4th Cir.1974).

■■■ While any question as to the ability of a juror to continue to hear a case and render a fair and impartial verdict based on the evidence presented must be dealt with promptly when brought to the court's attention, we do not believe the failure to do so in this case constitutes any prejudice to the appellant. The judge did, though not promptly, ask the jurors if any felt they could not begin their deliberations and conclude the deliberations. There was no response from any juror that they could not. Apparently whatever apprehension juror number nine experienced at the beginning of the trial had subsided and the juror was able to proceed to render a fair and impartial verdict.

■■ The decision to conduct further voir dire, or to strike the juror and the foreman from the panel rests with the sound discretion of the trial court. *United States v. Pomponio, supra,* at 462. *United States v. Licavoli*, 725 F.2d 1040, 1052 (6th Cir. 1984). Because the jury did not indicate to the judge an inability to proceed to render a fair and impartial verdict, we find no abuse of discretion in this case.

Appellant claims that it was error for the trial court to impose consecutive sentences on Counts 1 and 2 of the indictment. In Count 1, Grandison was charged with possessing heroin with the intent to distribute in violation of 21 U.S.C. 841(a)(1). Count 2

charged Grandison with possessing cocaine with the intent to distribute in violation of that same code section. Grandison claims that because the charges arose from one incident, the drugs were discovered in the same room, and were discovered simultaneously, consecutive sentences cannot be imposed for what is essentially one crime. We disagree.

The double jeopardy clause "imposes no restraint upon the power of Congress to define the allowable unit of prosecution and punishment where all charges are brought in one suit." *United States v. McDonald,* 692 F.2d 376, 377 (5th Cir.1982), and authorities cited therein. Indeed, "the power to proscribe the punishments to be imposed upon those found guilty .. resides wholly with the Congress." *Whalen v. United States,* 445 U.S. 684, 689, 100 S.Ct. 1432, 1436, 63 L.Ed.2d 715 (1979). Therefore, the sole question before us is whether Congress intended to provide for separate offenses and punishments under 28 U.S.C. 841(a)(1) for unlawful possession of each controlled substance.

■ 21 U.S.C. 841(a)(1) makes it a crime for "any person knowingly or intentionally to possess with intent to distribute a controlled substance." In this case the appellant was charged with possessing both heroin and cocaine. Heroin is a schedule 1 controlled substance. 21 U.S.C. § 812. Cocaine is a schedule 2 controlled substance. 21 U.S.C. § 812. Because different penalties are provided for possession with intent to distribute drugs listed in different schedules, we hold that Congress intended the possession of each scheduled substance to be a separate offense and to permit trial courts to impose separate sentences for each offense. *See United States v. Pope,* 561 F.2d 663, 669 (6th Cir.1977), *cf, United States v. Davis,* 656 F.2d 153 (5th Cir.1981).

■ Appellant claims the court erred in admitting evidence showing that Grandison had recently expended large sums of cash. It is clear that evidence of unexplained wealth is relevant in a narcotics prosecution as evidence of illegal dealings

and ill-gotten gains. *see United States v. Sperling,* 726 F.2d 69 (2nd Cir.1984), *United States v. Ariza-Ibarra,* 605 F.2d 1216 (1st Cir.1979). The relevance of this evidence is clear given the fact that Grandison was unemployed and only recently paroled. We find no error in the admission of this evidence.

■ Grandison contends that the trial court erred in admitting the transcript of Mr. Piechowitz's prior testimony from a suppression hearing in the trial of the case. Piechowitz was under oath, and was fully cross-examined at that hearing. Before trial, however, Piechowitz and a business associate were shot and killed. The government moved at trial to admit the testimony given at the suppression hearing pursuant to Rules 804(b)(1) and 804(b)(5) of the Federal Rules of Evidence. Because the witness was unavailable, and cross-examination was extensive, we find no error in the trial court's decision to admit this evidence.

■ Grandison assigns as error the trial court's denial of his motion to suppress the fruits of the search of his person when he was arrested on December 10, 1982. We find no merit in this claim. The warrant for Grandison's arrest for a parole violation was outstanding. Therefore, the officers who rely upon that warrant may arrest a person at whom the warrant is addressed and conduct a contemporaneous search of the arrestee's person and his possessions. *see United States v. Litman,* 739 F.2d 137 (4th Cir.1984) (en banc).

■ Lastly, Grandison seeks a direct appeal on the issue of ineffective assistance of counsel. He contends that trial counsel's failure to allege standing in connection with the motion to suppress the evidence recovered in the Warren House Hotel room denied him effective assistance of counsel. We ordinarily require claims of ineffective assistance to be first presented in the District Court in 28 U.S.C. § 2255 proceedings. *United States v. Mandello,* 426 F.2d 1021 (4th Cir.1970). In some cases, when the ineffectiveness appears on the trial record itself, we will hear such a

claim without prior evidentiary hearings. This, however, is not such a case and we decline to review this issue on direct appeal. This determination however, does not affect Grandison's right to apply for relief in a § 2255 proceeding should he elect to do so.

AFFIRMED.