64 F.3d 661
 NOTICE: Fourth Circuit Local Rule 36(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Jesse Ray PATTERSON, Defendant-Appellant.
 No. 93-5883.
 United States Court of Appeals, Fourth Circuit.
 Submitted April 25, 1995.
Decided Aug. 15, 1995.
 
 Thomas P. McNamara, HAFER, MCNAMARA, CALDWELL, CARRAWAY, LAYTON & MCELROY, Raleigh, NC, for Appellant.
 Janice McKenzie Cole, United States Attorney, Jane H. Jolly, Assistant United States Attorney, Raleigh, NC, for Appellee.
 Before WIDENER and MICHAEL, Circuit Judges, and PHILLIPS, Senior Circuit Judge.
 OPINION
 PER CURIAM:
 
 
 1
 Jesse Ray Patterson appeals from his conviction of and sentence imposed for conspiracy to possess with intent to distribute cocaine in violation of 21 U.S.C.A. Sec. 846 (West Supp.1995), and use of a firearm during and in relation to a drug trafficking crime in violation of 18 U.S.C.A. Sec. 924(c) (West Supp.1995). Patterson's attorney has filed a brief in accordance with Anders v. California, 386 U.S. 738 (1967), asserting that there are no meritorious issues for appeal. Patterson has filed a pro se brief arguing that the district court erred in denying his motion for judgment of acquittal on the basis of entrapment. Finding no error in the district court proceedings, we affirm.
 
 
 2
 During the jury trial, the government presented evidence that Joe Taylor, a confidential informant, received information that Patterson was interested in purchasing cocaine. During a meeting between Taylor, Patterson and Co-defendant Tommy Lindsey, Patterson asked Taylor to obtain a kilogram of cocaine for him. Taylor agreed to obtain the cocaine for Patterson. Taylor then contacted Randy Smith, a special agent of the Drug Enforcement Administration ("DEA"), and advised him of his meeting with Patterson. To verify this information, Smith had Taylor call Patterson and discuss the transaction. Smith recorded this telephone conversation, during which Taylor stated that he would have to get one and a half kilograms of cocaine and the price would be $30,000. Patterson stated that he would do all that he could to obtain the money.
 
 
 3
 Taylor placed another monitored telephone call to Patterson, during which they arranged to meet at a Denny's restaurant in Raleigh, North Carolina. When Taylor told Patterson to "bring 30," meaning bring $30,000, Patterson said, "all right." Patterson and Lindsey travelled to Raleigh in Patterson's truck. Lindsey observed in the truck a plastic bag containing flour.[1] Patterson informed him that they could throw the flour out the window if any police officers tried to stop them.
 
 
 4
 In the restaurant, Patterson and Lindsey met Taylor and DEA Special Agent Randy Smith, whom was introduced by Taylor as the supplier from Florida. Patterson asked if Smith could supply five to ten kilograms of cocaine per week because a third party had agreed to front the money to Patterson for such quantities. Patterson also stated that he had obtained plastic bags in which to distribute the cocaine and he intended to purchase a cutting agent. He asked Taylor for assistance in getting rid of the cocaine.
 
 
 5
 After discussing this and possible future transactions, the parties went outside. Smith and Patterson got into Patterson's truck. Patterson removed a bank bag from the glove compartment, tossed it on Smith's lap, and stated that the money was all there. Smith instructed Patterson to drive over to where Taylor's truck was parked because the cocaine was in the truck. After Patterson moved his truck, the surveillance team arrested him. The agents found a revolver in the glove compartment of Patterson's truck and a pistol on the front seat.
 
 
 6
 The government also produced evidence that Patterson had been involved in a drug transaction prior to this transaction. Ramsey Latham testified that Patterson gave him $1500 to purchase a pound of marijuana and loaned him his truck. When Latham returned to Patterson's house with the drugs, he gave the marijuana to Patterson who put it in a trailer on his property.
 
 
 7
 In his defense, Patterson testified that he had been experiencing financial difficulties. Taylor offered to help him with his financial situation. When Patterson asked how, Taylor stated: "I can get you a kilo of cocaine." Patterson immediately refused, stating that it is against the law and that he was a law enforcement officer. Taylor replied that he would buy the cocaine, cut it, package it, sell it, and share the profits with Patterson. All Patterson had to do was "show some money." Patterson testified that Taylor persisted in trying to convince him for over an hour. Patterson finally broke down and said he would try to get the money. He testified that he had not entered into a drug deal; he was merely to show the money. Patterson testified that during the meeting in Denny's, he did not request that Smith supply him with ten kilograms of cocaine per week; rather, he mentioned that he knew someone who would be interested in purchasing the drugs in that quantity.
 
 
 8
 Regarding the firearms in his truck, Patterson testified that he left the revolver in the glove compartment several months earlier, after qualifying at the police firing range. He testified that he laid the pistol on the seat of the truck two months earlier, when he was transporting money to the bank. He had no intention of using either firearm.
 
 
 9
 At the close of the government's case and at the close of the evidence, Patterson moved for judgment of acquittal, arguing that the evidence showed entrapment as a matter of law. The court denied the motions, but included instructions on the law of entrapment in its charge to the jury.
 
 
 10
 After the jury returned guilty verdicts on both counts, the district court sentenced Patterson to seventy months on the conspiracy count with a consecutive sixty months imprisonment on the firearms charge. The court also imposed a five-year supervised release term, a $100 assessment, and a fine of $5700.
 
 
 11
 We find that there was substantial evidence which, taken in the light most favorable to the government, would warrant a jury finding that the defendant was guilty beyond a reasonable doubt. Fed.R.Crim.P. 29(a); United States v. MacCloskey, 682 F.2d 468, 473 (4th Cir.1982). Also, we find that the government produced sufficient evidence of Patterson's predisposition to commit the crime to preclude judgment that he was entrapped as a matter of law. See Jacobson v. United States, 503 U.S. 540, 548-49 (1992); United States v. Duvall, 846 F.2d 966 (5th Cir.1988) (entrapment a jury issue if some evidence of predisposition). We therefore conclude that the district court properly denied Patterson's motions for judgment of acquittal based upon entrapment.
 
 
 12
 Further, we find that the district court properly denied Patterson's motions for judgment of acquittal based upon insufficient evidence. The evidence, viewed in the light most favorable to the government, was sufficient for a rational trier of fact to have found beyond a reasonable doubt, that Patterson was guilty of conspiracy to possess with intent to distribute cocaine and guilty of using or carrying a firearm during and in relation to a drug trafficking offense. Glasser v. United States, 315 U.S. 60, 80 (1942); United States v. Tresvant, 677 F.2d 1018, 1021 (4th Cir.1982). We therefore affirm the district court's denial of judgment of acquittal on this basis. See Fed.R.Crim.P. 29(a); MacCloskey, 682 F.2d at 473.
 
 
 13
 We also find no plain error in the district court's instructions to the jury on the law of entrapment. See Fed.R.Civ.P. 51; Hafner v. Brown, 983 F.2d 570, 578 (4th Cir.1992). The instructions as a whole clearly inform the jury that the government has the burden of proving beyond a reasonable doubt every element of the case, including entrapment.
 
 
 14
 In accordance with Anders, 386 U.S. at 744, we have reviewed the entire record in this case and have found no meritorious issues for appeal.[2] We therefore affirm Patterson's conviction and sentence. This Court requires that counsel inform his client, in writing, of his right to petition the Supreme Court of the United States for further review. If the client requests that a petition be filed, but counsel believes that such a petition would be frivolous, then counsel may move in this Court for leave to withdraw from representation. Counsel's motion must state that a copy thereof was served on the client. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the Court and argument would not aid the decisional process.
 
 
 15
 AFFIRMED.
 
 
 
 [1]
 The bag was later determined to weigh one and one-half kilograms, the same as the amount of cocaine that Taylor agreed to obtain
 
 
 [2]
 Although we grant Patterson's motion for leave to file additional information, the documents present a new theory which was not presented to the district court. Therefore, we cannot determine this issue on appeal. See United States v. Maxton, 940 F.2d 103, 105 (4th Cir.), cert. denied, 502 U.S. 949 (1991). Further, we find that remand for the purpose of having the district court consider this theory is not warranted. See Fed.R.Crim.P. 33; United States v. Chavis, 880 F.2d 788, 793 (4th Cir.1989). To the extent that Patterson seeks to challenge the effectiveness of trial counsel, because the record does not conclusively show that counsel's performance was deficient, these claims cannot be addressed on direct appeal; rather, they should be raised by a motion filed in the district court pursuant to 28 U.S.C. Sec. 2255 (1988). See United States v. Grandison, 783 F.2d 1152, 1156-57 (4th Cir.), cert. denied, 479 U.S. 845 (1986)